UNITED STATES METALS REFINING CO. v. JACOBUS et al.

(Circuit Court of Appeals, Second Circuit. May 12, 1913.)

No. 148.

SHIPPING (§ 132*)—LIABILITY FOR LOSS OF CARGO—UNSEAWORTHINESS.

　　Where a barge hired under a contract requiring the owner to "furnish only seaworthy boats" after being loaded with a cargo of copper ore careened and dumped its load while lying in a sheltered basin, without any known external cause, the presumption is that it was unseaworthy for the cargo, and, in the absence of evidence to the contrary, the owner is liable for the loss.

　　[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the United States Metals Refining Company against Charles A. Jacobus and another. Decree for libelant, and respondents appeal. Affirmed.

The following is the opinion of Holt, District Judge:

This is a rather strange case. It appears clearly enough that this was a very strongly built vessel; that is, it was made strong when it was changed to a barge to carry a deck cargo. It seems to have been taken very good care of; there were several occasions on which it was put in drydock and put in order—the last time not very long before this accident. It seems to have carried heavy cargoes well up to three or four months before this accident. After that time she was carrying this copper ore, and the evidence is that the largest cargo of this ore which she carried before this one which capsized was about 350 tons.

Now, it is quite natural that the owners of this barge should have supposed that she was in good order, but the rule is fundamental that in contracts of affreightment the vessel must be seaworthy. It is not of any consequence whether the owner supposed it was seaworthy, or whether he had used his best efforts to ascertain whether she was seaworthy. It is an absolute requirement that she be seaworthy, based on the ground of public policy. The ordinary cargo owner does not know, and has no means of knowing, the con-

dition of the vessel, and the owner is bound to have a vessel that is seaworthy at the beginning of the voyage.

This is a case of a barge lying at Erie Basin loaded with 550 or 600 tons on deck, and in apparently good order, and at about half past 5 in the morning it careens. It has been suggested that there might have been some swell from passing ferryboats, or that she might have been bumped into and injured by some other vessel. There is not a shred of evidence to that effect, and indeed the evidence of two men that slept on the boat shows that they heard nothing at all the entire night. I think if there had been anything of any serious nature like a collision with another vessel, or heavy enough swells to move the vessel sufficiently to injure her, they would have been awakened and known of it.

The burden is on the owners to show that she was seaworthy. This barge careened and threw off her cargo while lying in a protected basin, without any evidence of anything whatever having happened to her. It seems to me a case of res ipsa loquitur; no vessel ought to do that if she is seaworthy.

I think the fair inference to be drawn is that she was taken down by the light loads which she had previously carried, and this load. The captain says that after she was pumped out she did not take in water any more, which she would have done if there had been a leak below the point to which she was submerged before they put a heavy load on. The evidence shows that it could be seen that this seam was started after the careening, and it might have been caused of course by the careening itself, or might have existed before. There seems to have been a strip about 18 inches long where the oakum was loose as distinguished from the rest of the oakum in the seam, and I think the inference probably is that there is where the leak occurred. At all events, it is obvious that there must have been a leak and that water got in through it and caused the boat to careen, and I think that the leak must have occurred somewhere above the line at which she was sunk when she was light and the line at which she sunk by this heavy load. She therefore was not seaworthy for such a load, as there was a place there where the water would come in when so heavy a load was put on the barge.

The result is that there must be a decree for the libelant for the damages.

Foley & Martin, of New York City (F. A. Spencer, Jr., and William J. Martin, both of New York City, on the brief), for appellants.

Harrington, Bigham & Englar, of New York City (H. S. Harrington and Anthony V. Lynch, Jr., both of New York City, on the brief), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. This case does not depend upon an implied warranty of seaworthiness. The contract provided expressly that the respondents should "furnish only seaworthy boats." Under it they were bound to furnish such boats; it was not a question whether they used due diligence to furnish them. So it was immaterial whether the respondents were common or special carriers.

The sudden capsizing of the vessel under the conditions shown raised a presumption of unseaworthiness which the evidence offered did not rebut.

The arbitration provision was not a bar to the suit.

Nothing further need be added to the opinion of Judge Holt, and consequently the decree appealed from is affirmed with interest and costs.